IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 6, 2018

## STATE OF TENNESSEE v. GABRIEL DOTSON

**Appeal from the Criminal Court for Shelby County**
**No. 14-06409      W. Mark Ward, Judge**

_____

### No. W2017-01099-CCA-R3-CD
_____

The defendant, Gabriel Dotson, was convicted of rape of a child, aggravated sexual battery, rape, and incest for which he received an effective sentence of thirty-five years. On appeal he challenges his convictions on the grounds there was insufficient evidence to support the jury's verdicts, the State made improper statements throughout trial which prejudiced the defendant, the trial court erred in instructing the jury, the trial court erred in enhancing his sentence, and the cumulative effect of the errors at trial prejudiced the verdict. Upon our thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Melody M. Dougherty, Memphis, Tennessee, for the appellant, Gabriel Dotson.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Bryce Phillips and Sarah Poe, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

On December 16, 2014, a Shelby County Grand Jury indicted the defendant for rape of a child, aggravated sexual battery, rape, statutory rape by an authority figure, and incest. The charge for statutory rape by an authority figure was later dismissed.

The defendant was charged with abusing his biological daughter, G.D.[1]  At the time of the trial, she was nineteen years old.  The victim, the eldest of five children, was born on July 20, 1997.  The victim testified the defendant started sexually abusing her the summer before she started the seventh grade.

The victim's first memory of the abuse was after the defendant asked what she would do for $100.  She offered to clean her parents' closet or the entire house, but said she would not "do anything like prostitution . . .."  A couple days later the victim asked the defendant for money to go shopping.  The defendant gave her his debit card and told the victim she could get whatever she wanted, as long as she did what he asked when she came home.  When the victim returned from shopping, the defendant ordered her to sit down and lay back on the bed.  She asked why, and he pushed her back and said "Becky."  The victim clarified that "Becky," the name of a popular song, was slang "detailing things that you do throughout sex and stuff like that."  The victim became upset and left the room.

The next incident the victim recalled occurred during the summer before seventh grade.  The victim could not recall whether it occurred before or after her birthday on July 20, but testified she was either eleven or twelve at the time.  During this incident, defendant came into her room one night and got under the covers with her.  She asked him what he was doing, and the defendant told her that he was just putting his tongue "down there," and then licked the inside of the victim's vagina.

The victim could not recall the exact date of the next incident because the abuse occurred "many times," twice per week between 2009 and 2014 and in many areas of the house.  On one occasion in 2013 or 2014, the defendant came into the room, told the victim to put away her phone, pulled down her pants, and touched her vagina.  When the defendant tried to insert his penis into the victim's vagina she felt pressure on her vagina but did not think his penis went all the way into her vagina.  The victim testified she would tell the defendant to stop, but it did not deter him.  According to the victim, the defendant would tell her "he just wanted to teach her."

On another occasion the defendant tried to penetrate the victim's anus.  The victim remembered the incident occurring in 2011 on her mother's birthday, prior to her freshman year of high school.  The victim was in bed in her room when the defendant tried to penetrate her anus with his penis.

---

[1] It is the policy of this Court to refer to victims of sexual abuse by their initials.  For purposes of this opinion "the victim" will refer to G.D. unless otherwise noted.

The victim also testified that the defendant would demand she give him "special hugs." The defendant had the victim wrap her arms around his neck while he placed his hands on her buttocks and left no space between their bodies so that she could feel his erect penis. She recalled the "hugs" started within the first year after the abuse began in 2009.

The victim explained the sexual abuse noticeably affected her. She became an introvert and avoided being touched by people. She became suicidal and cut her wrists and arms a "couple of times." The anxiety, caused by the abuse, began to trigger asthma attacks that left her unable to breathe. She visited her doctor for chest pains and was diagnosed as suffering from panic attacks.

The victim did not disclose the abuse for several years for numerous reasons. She thought her family was happy. Her parents had just gotten married, and they were about to have twins. Also, the defendant was the primary income source for the family, and the victim feared her family would suffer financially without him. She also believed the defendant had anger issues. Though the defendant never threatened the victim, she feared him. He often warned her not to disclose the abuse, telling her it was between the two of them, and he was "just trying to teach her."

In March 2014, Sharon McQueen from the Department of Children's Services came to the victim's school after receiving a report from Annika Ezell, the victim's school mentor, that the defendant was sexually abusing the victim. Ms. Ezell testified that she had been notified the victim was harming herself. When Ms. Ezell asked the victim about the situation, she initially downplayed her problems. However, a couple of days later, the victim admitted she had been hurting herself due to the defendant's abuse.

The school held a meeting with the victim, Ms. Queen, and Darla Young, the assistant principal. Ms. Queen asked the victim if her father had been abusing her. The victim answered yes and disclosed all incidents of abuse occurring since 2009. The victim testified she "broke down" during this meeting, injuring herself with a pencil and her nails.

Ms. Ezell then left the office to speak with the victim's parents. The victim could hear her mother crying and screaming and did not want to see either of her parents. She provided a statement at the Child Advocacy Center in March 2014. During the interview, the victim denied the defendant ever put his penis inside her vagina but said he put his penis in her anus one time.

The jury also heard testimony from the victim's mother. She testified that of her five children, the victim is the oldest. In March 2014, the victim's mother received notice

from the school that the victim was having a panic attack. Upon receiving the call, she told the defendant she was going to the victim's school, and the defendant wanted to accompany her. She found this unusual because the defendant had been at work until early that morning. Ms. Cooper and the defendant brought their infant twins with them to the school.

After arriving at the school, Ms. Cooper and the defendant were informed the victim did not want to see them, which shocked Ms. Cooper. Ms. Cooper said the defendant appeared nervous, which she attributed to him worrying about the victim. Ms. Cooper was then led to the back of the office. The defendant was not allowed to go with her and stayed behind with their twin children. Ms. Cooper spoke with Ms. Queen, who informed her of the victim's the allegations. On hearing about the abuse, Ms. Cooper became overtly distraught.

When Ms. Cooper returned to the front of the office, the defendant was gone. The police had arrived at the school while Ms. Cooper was speaking with Ms. Queen, and the defendant fled. Though, Ms. Cooper did not see the defendant for a few days after the meeting at the school, they did speak on the phone later that day. When she confronted the defendant with the allegations, the defendant remained silent. Ms. Cooper testified that she did not allow the defendant to return home after learning of the abuse. The defendant later turned himself into police.

Officer Jonathan Fields, a police officer with the Memphis Police Department, testified he was on duty the evening of March 19, 2014, when the defendant came into the station.[2] Officer J. Fields stated the defendant came in with his uncle and appeared nervous and upset. Officer J. Fields recounted the defendant's behavior as follows:

> [The defendant] held his hands out, and told [the officer] to put the cuffs on him, that he wanted to kill himself, because he had been touching his daughter . . . . He said that he had been touching on her for a couple of years, and he only did it when he was intoxicated . . . he didn't have sex with her, but he touched her underneath her clothes.

Because the defendant expressed a desire to kill himself, Officer J. Fields called for the Crisis Intervention Team ("CIT").

Officer SirCrease Fields, a CIT officer, responded to the call regarding the defendant. Officer S. Fields testified that he spoke with the defendant, who admitted he

---

[2] The State called both an Officer Johnathan Fields and an Officer SirCrease Fields. We will refer to them as J. Fields and S. Fields to distinguish the officers.

had "been touching his daughter, and . . . making her touch me." The defendant said that he knew it was wrong and wanted to kill himself. Based on his initial admissions, the defendant was taken into protective custody and interviewed. During the interview, the defendant again reiterated that he wished to kill himself because he had abused the victim, and the CIT provided medication and counseling.

The jury convicted the defendant as charged. At the sentencing hearing, the trial court noted the defendant had a history of criminal behavior based on his daily use of marijuana. When considering the State's request for consecutive sentences, the trial court stated:

> I do note that in this case that -- I do have some aggravating factors. Number one, the relationship between the parties is a very important factor. [It is] her father. The time span is another thing. This occurred over a lengthy period of time. And, quite frankly, I also find a third factor. There was testimony in the trial that she was contemplating suicide. I have this letter. [I am] not going to put a great deal of weight on that, but I think the other two are enough alone, the length of time and the relationship between the parties. I am concerned a little bit that I [do not] have any expert proof on the third factor, but [I am] not going to put a lot of weight on that, but I did hear some on those.

On September 22, 2016, the trial court sentenced the defendant to twenty-five years for rape of a child, ten years for aggravated sexual battery, ten years for rape, and five years for incest. The trial court ordered the ten-year sentence for aggravated sexual battery to run consecutively to the twenty-five-year sentence for rape of a child, and ordered the remaining sentences to run concurrently for an effective sentence of thirty-five years. On September 29, 2016, the defendant timely filed a motion for a new trial. On May 3, 2017, the trial court entered a written order denying the motion. The defendant filed a timely notice of appeal.

### *Analysis*

On appeal, the defendant challenges his conviction on five separate grounds. First, the evidence is insufficient to sustain his convictions for rape of a child, incest, and aggravated sexual battery. Second, the State made numerous inappropriate comments and elicited prejudicial testimony that rose to the level of plain error and warrant a reversal of the defendant's conviction. Third, the jury should have received specific lesser-included offense instructions. Fourth, the trial court abused its discretion when enhancing the defendant's sentence. Finally, the errors committed by the State had a cumulative effect on the trial and consequentially prejudiced the defendant.

## A. Sufficiency of the Evidence

When the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245

S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

### 1. Rape of a Child and Incest

The defendant was convicted of rape of child and incest. Rape of child is defined as the "unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three . . . years of age but less than thirteen . . . years of age." Tenn. Code Ann. § 39-13-522(a). "Sexual penetration" includes: "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7). "A person commits incest who engages in sexual penetration with a person, knowing the person to be, without regard to legitimacy, the person's natural child." Tenn. Code Ann. § 39-15-302(a)(1). The victim in this case is the defendant's biological daughter.

The jury heard from the victim who testified the defendant used his tongue to lick inside her vagina. The victim further testified the defendant used his hand to touch her vagina as well. The victim noted this abuse began during the summer of 2009 before her seventh grade year. While the victim was unsure whether she was eleven or twelve at the time of the abuse, it is uncontested that the victim, who was born on July 20, 1997, would have been under thirteen years of age when the abuse occurred. The defendant, therefore, is not entitled to relief.

### 2. Aggravated Sexual Battery

The defendant was also convicted of aggravated sexual battery. "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant" where "the victim is less than thirteen years of age." Tenn. Code Ann. § 39-13-504. "'Sexual contact' includes the intentional touching of the victim's[] [or] the defendant's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's[] [or] the defendant's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6).

At trial, the victim testified that the defendant would give her "special hugs" during which the defendant grabbed her buttocks and pulled her against his body with "no space between them." The victim noted she could feel the defendant's erect penis during these hugs. When asked for a time frame for these hugs, the victim testified, "It wasn't too long after [the abuse] first started, but it was a little while after [the abuse] first started." She testified that the "special hugs" began "within the first year" but was unable to say whether the "special hugs" began days, weeks, or months after the first act of abuse. The State charged aggravated sexual battery based on these hugs, and the State elected to submit for the factual basis the first time the defendant gave the defendant this "special hug" in 2009.

The defendant argues the lack of specificity for the timeframe when these hugs began is insufficient to support the jury's verdict on the elected offense. The defendant submits that without more definite testimony, the statement, "within the first year," could lead a reasonable trier of fact to conclude the victim was thirteen. Therefore, the defendant argues, he could not be found guilty of aggravated sexual assault because of the statute's age requirement.

However, taken in the light most favorable to the State, a rational trier of fact could infer from the evidence that the "special hugs" occurred within the year starting from her twelfth birthday. There is no evidence in the record that would undermine a reasonable assumption by the jury that the assault took place while the victim was twelve years old. The jury, as the trier of fact, is entrusted to resolve all conflicts in the evidence. *State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003). The jury in this case chose to infer from the victim's testimony that she was either eleven or twelve years old when the "special hugs" began. The defendant, therefore, is not entitled to relief.

*3. Rape*

Finally, the defendant was convicted of rape. Rape is the "unlawful sexual penetration of a victim by the defendant accomplished by force or coercion, or without the consent of the victim and the defendant knows or has reason to know at the time that the victim did not consent." Tenn. Code Ann. § 39-13-503(a)(1)-(2). The State elected to submit for the factual basis the act of anal penetration alleged to have occurred in the spring of 2014.

At trial, the victim testified the defendant tried to insert his penis into her anus. She disclosed to Ms. Young, as well as Ms. Ezell, that the defendant put his penis in her anus on one occasion. Additionally, the victim stated she would always tell the defendant, "stop" and, "leave me alone," even though it did not deter him.

The defendant argues the victim never testified to feeling pressure during the attempted anal penetration, so the evidence is insufficient to support the jury's verdict. This argument is based on the victim's testimony that she felt "pressure" during the attempted vaginal penetration, so the defendant presumes the victim would have also referenced "pressure" had there been anal penetration. In resolving the lack of detail regarding the anal rape, a rational trier of fact could infer, based on the testimony of the victim and the consistency of the description of other acts of penetration by the defendant, anal penetration occurred. *Evans*, 108 S.W.3d at 237. Furthermore, the statute does not require the State to prove the victim experienced pain or pressure, only that a penetration, however slight, occurred. *See State v. Bowles*, 52 S.W.3d 69 (Tenn. 2001) (holding a victim's testimony describing how defendant pressed his penis against her vulva with his hand was sufficient evidence of "penetration" involving invasion of the genital opening to support conviction for aggravated rape, even though testimony was not entirely consistent regarding whether a penetration occurred). Finally, it is undisputed the victim did not consent to the penetration. The defendant, therefore, is not entitled to relief.

## B. Prosecutorial Error

The defendant argues the State made improper statements during its opening statement, closing argument, and case in chief. The defendant contends these statements were prejudicial, irrelevant, inflammatory, or misstatements of the evidence. While the defendant concedes he did not lodge contemporaneous objections to any of the challenged statements, he urges this Court to review these statements for plain error. *See State v. Gann*, 251 S.W.3d 446, 458 (Tenn. Crim. App. 2007) (holding that defendant's failure to lodge a contemporaneous objection during challenged closing argument waived plenary review of the issue and left only plain error review).

Before an error may be recognized, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). In *State v. Smith*, our Supreme Court adopted *Adkisson*'s five-factor test for determining whether an error should be recognized as plain:

(a) The record must clearly establish what occurred in the trial court;

(b) A clear and unequivocal rule of law must have been breached;

(c) A substantial right of the accused must have been adversely affected;

(d) The accused did not waive the issue for tactical reasons; and

(e) Consideration of the error is "necessary to do substantial justice."

24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283.

The established test for determining whether prosecutorial error based on improper comments amounts to reversible error is whether the conduct was so improper, or the argument so inflammatory, that it affected the verdict. *See State v. Reid*, 164 S.W.3d 286, 344 (Tenn. 2005); *State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). In assessing whether comments made by the prosecution are so inflammatory or improper as to affect the verdict, the court must consider five factors:

(1) The conduct complained of viewed in the context and the light of the facts and circumstances of the case;

(2) The curative measures undertaken by the court and the prosecution;

(3) The intent of the prosecutor in making the improper statements;

(4) The cumulative effect of the improper alleged conduct and any other errors in the record; and

(5) The relative strength or weakness of the case.

*Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); see also *Goltz*, 111 S.W.3d at 5-6. We address the challenged statements from each phase of the trial.

*1. Opening Statements*

The defendant argues the State twice committed prosecutorial error during opening statements. First, the prosecutor, in introducing the jury to the case, stated, "[A]s you heard in the indictment . . . ." The defendant maintains this statement implied the State was instructing jurors that the indictment was evidence. Based on our review of the context of the statement, the intent of the prosecutor was not to indicate to the jurors they

- 10 -

should consider the indictment as evidence.  Instead, the State referenced the indictment to orient the jurors as to the issues under consideration at trial.  Additionally, the defendant cites no law indicating a prosecutor cannot reference an indictment during his opening statement.  *C.f. State v. James Denver Case*, No. M2014-00949-CCA-R3-CD, 2015 WL 7458507, at *10 (Tenn. Crim. App. Nov. 24, 2015) (finding that an improper statement by the judge as to probable cause within the indictment did not rise to the level of plain error). Consequently, no unequivocal rule of law has been breached.

Second, the defendant challenges as improper a comment made about the victim's mother's decision to be referred to by her maiden name.  The State informed the jury they would be hearing from "Ms. Donna - then Dotson, now Donna Cooper, for obvious reasons."  The defendant argues this statement was an attempt to admit inadmissible evidence that Ms. Cooper changed her last name because she divorced the defendant after he abused the victim.  As an initial matter, we note that the witness expressed a desire to be referred to by her maiden name and, based on our review of the record, there was no reason for the State not to respect the witness' request.  Furthermore, the defendant cites no law indicating a prosecutor's decision to refer to a witness by her maiden name after a potential divorce is prejudicial to a defendant.  Even discounting the defendant's failure to cite applicable law, the State's comment, in context, was not an attempt to introduce inadmissible evidence.  The State was referencing future testimony.  Ms. Cooper testified she told the defendant not to return home after she became aware of the allegations against the defendant and informed the trial court she preferred to be referred to by her maiden name.  Consequentially, no unequivocal rule of law was breached.  *Smith*, 24 S.W.3d at 282-83.

### 2. Comments made during the State's case in chief

The defendant next argues the State committed prosecutorial error with four statements made during its case in chief.  First, the State referred to the victim by her nickname, "G****," throughout the trial.  The defendant argues this nickname infused sympathy and imposed upon the jury the sense the victim was still a child.  Initially, we note the victim requested to be referred to by her nickname in lieu of her given name.  Furthermore, the victim's nickname, G****, is the equivalent to referring to a person with the given name of "William," by the nickname "Billy."  The victim testified at length, and in detail, about the abuse she suffered, and we are not persuaded that a reasonable fact finder would have given any more or less credence to the victim's testimony, regardless of what name she was referred to during trial.  We, therefore, conclude the defendant was not prejudiced by the use of the victim's nickname during trial.

Second, the defendant challenges a specific statement made during the State's direct examination of the victim, when the State made the aside comment, "I know penetration is difficult." The defendant argues this statement was irrelevant, created bias and sympathy, and was the prosecutor's personal opinion. In order to determine if this statement was improper, we examine it in context. The entire question asked by the State was: "Is there ever a time that he did something to you, but did not penetrate at all, as far - and I know penetration is difficult. But, is there any time when his tongue or any part did not go inside your vagina whatsoever?" In context, the State appears to be asking the victim how often the defendant engaged in even slight penetration or touching, acknowledging to the victim that full penetration may not have occurred or that penetration is not easily definable. Based on a full reading of question at issue, the defendant has failed to establish a violation of a clear and unequivocal rule of law and, therefore, is not entitled to relief.

Third, the defendant argues the State prejudiced the defendant when asked by the trial court if they wished to conduct a redirect examination of the victim, the State responded, "I think she's been up there enough. I have no redirect at this time." The defendant argues this created bias in the jury because it gave the impression that defense counsel had needlessly cross-examined the victim. The defendant's argument is not persuasive.

In reviewing the trial transcript, the cross-examination of the victim spans eight pages. The State's direct examination of the victim spans forty-eight pages. In context, we conclude this challenged statement is the State acknowledging that its direct examination was the reason the victim had "been up there long enough." In the absence of any law cited by the defendant, we conclude this statement was not a breach of a clear and unequivocal rule of law and did not adversely affect a substantial right of the defendant. *See State v. Armstrong*, 256 S.W.3d 243, 249 (Tenn. Crim. App. 2008); *see also State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998). Thus, the defendant has failed to meet the plain error standard and is not entitled to relief.

Finally, the defendant challenges a statement made by the State during Ms. Cooper's direct examination. After asking Ms. Cooper the name of her eldest child, the state asked, "I know you've got several kids, but you've got to kind of look up on that one. So, [the victim], is she the one that was just here who testified?" The defendant argues the statement was irrelevant, created bias and sympathy, and was the prosecutor's personal opinion. The defendant makes no additional arguments and cites no additional law challenging this statement. Despite the question being awkwardly phrased, this Court views this question as only a request that Ms. Cooper confirm that the victim is her eldest daughter and had just testified about the defendant's abuse. The defendant has failed to meet the burden of persuasion of how this statement constituted a breach of a

clear and unequivocal rule of law and/or how it adversely affected a substantial right of his. *See Armstrong*, 256 S.W.3d at 249; *see also Cauthern*, 967 S.W.2d at 737. Thus the defendant is not entitled to relief.

### 3. Hearsay elicited during the State's Case in Chief

The defendant argues the State elicited irrelevant and prejudicial hearsay testimony throughout its case in chief. The defendant enumerates several different statements; however, these statements either involved witness' accounts of the victim's attempts at self-harm, witness' accounts of Ms. Cooper's reaction on learning about the abuse, or statements by the victim herself about how she felt at the time. The defendant argues the testimony elicited was irrelevant and invoked bias and sympathy from the jury. As noted by the defendant, he failed to object to any of this testimony at trial and, therefore, must establish plain error.

Initially we note the defendant does not specify exactly what testimony he contends is improper. Rather, he gives a general statement about each with a multiple page citation as a reference. Upon reviewing the pages of testimony referenced by the defendant, it is clear the testimony was highly relevant to the severity of the abuse suffered by the victim and the impact the abuse had on the victim and her family. Furthermore, the defendant cites no law that indicating that potentially emotional testimony infringes upon a substantial right of the defendant, nor does the defendant explain or discuss how each particular section of testimony uniquely prejudiced him. *See Armstrong*, 256 S.W.3d at 249. Finally, all of the declarants were available at trial for the defendant to cross-examine. Therefore, the defendant had the opportunity to challenge the testimony of the witnesses. *See State v. Charles Owens*, No. M2005-02571-CCA-R3-CD, 2007 WL 1094136, at *17 (Tenn. Crim. App. Apr. 12, 2007) (citing *Crawford v. Washington*, 541 U.S. 36 (2004)). Based on the foregoing, the defendant has failed to meet his required burden and is not entitled to relief.

### 4. Closing Arguments

The defendant also argues the State referred to facts outside the record, gave personal opinions, and vouched for the credibility of the State's witnesses during closing argument. The propriety of statements made during closing argument is subject to the trial court's discretion. *State v. Thornton*, 10 S.W.3d 229, 234-35 (Tenn. Crim. App. Oct. 19, 1999). Counsel for both the prosecution and the defense should be permitted wide latitude. *Id.* (citing *State v. Bigbee*, 885 S.W.2d 797, 809 (Tenn. 1994)). Arguments must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law. *State v. Middlebrooks*, 995 S.W.2d 550, 557 (Tenn. 1999). The defendant argues the State went

beyond their permitted latitude seven times committing prosecutorial error warranting reversal.

The defendant's primary challenge to the State's closing argument is a series of statements where the State said the defendant admitted to anal "penetration of his biological daughter." The defendant argues this was a misstatement of the evidence. The defendant contends that he never admitted to the penetration of his daughter, he only admitted to "inappropriate touching." Additionally, the defendant argues he never anally penetrated the victim, and the testimony about pressure did not occur in relation to the defendant's attempt to anally penetrate the victim.

While it is true the victim did not testify to pressure during the attempted anal penetration, we do not find this misstatement to rise to the level of prosecutorial error. The victim testified the defendant attempted to anally penetrate her, and the jury heard testimony from other witnesses that the victim disclosed the attempted anal penetration. Even if the prosecutor erred in stating the victim experienced pressure during the anal penetration, the State presented overwhelming evidence as to multiple incidents of penetration. Therefore, any error in the misstatement was harmless and does not rise to the level of plain error. *See Judge*, 539 S.W.2d at 344.

Next, the defendant challenges the State's comment: "That's an ugly word for an ugly situation." The State was speaking of the word "cunniligus" in reference to the first act of abuse the defendant committed against the victim. The defendant fails to cite any law as to why this statement was improper. The defendant simply argues that it represents the prosecutor's personal opinion and was unduly prejudicial. However, the prosecutor's personal opinion of the word "cunnilingus" does not represent a personal opinion on the guilt of the defendant. *Cauthern*, 967 S.W.2d at 737. In the absence of any further explanation or citation to binding authority, we are not persuaded this aside by the prosecutor violated a substantial right of the accused. *See Armstrong*, 256 S.W.3d at 249.

Third, the defendant argues the State attempted to create sympathy for the victim and use emotion to prejudice the jury against him by stating it was "difficult" for the victim to testify about the abuse. The record indicates that during her direct examination, the victim requested a recess because describing what the defendant had done to her was upsetting. The State was well within its latitude to comment on a fact that would have been obvious to any fact finder observing the trial. *Thornton*, 10 S.W.3d at 234. In the absence of any further explanation or citation to binding authority, we are not persuaded this comment violated a substantial right of the accused. *See Armstrong*, 256 S.W.3d at 249.

- 14 -

Fourth, during the State's closing argument the prosecutor again referenced Ms. Cooper's decision to divorce the defendant. The defendant again argues it was inappropriate for the State to comment on the reason Ms. Cooper chose to be referred to by her maiden name. As discussed supra, the State's comment did not constitute prosecutorial error.

Fifth, the defendant challenges two statements during which the State rhetorically asked the jury to evaluate the credibility of the witnesses. Specifically, the State asked if "it made any sense" for the witnesses to fabricate their testimony. The defendant again argues this amounted to prosecutorial error because the State was personally commenting on the credibility of witnesses. However, in context, the State additionally asked the jurors to examine their own notes and urged them to the make the ultimate decision as to witness credibility based on the testimony. These types of rhetorical flourishes are well within the wide limits available to attorneys during closing. *Thornton*, 10 S.W.3d at 235. In the absence of any further explanation or citation to binding authority, we are not persuaded this language from the State violated a substantial right of the accused. *See Armstrong*, 256 S.W.3d at 249.

The defendant also complains about the State's comment, "It happened the summer of 2009. Yeah, he knows it did." The defendant argues this statement was combative, improper, and gave the prosecutor's personal opinion of the facts. In light of the victim's extensive testimony pinpointing the start of the abuse to 2009, the weight of the evidence overwhelms any potential effect this comment might have had. *Cauthern*, 967 S.W.2d at 737. In the absence of any further explanation or citation to binding authority, we are not persuaded this aside from the State violated a substantial right of the accused. *See Armstrong*, 256 S.W.3d at 249.

Finally, in concluding its remarks to the jury, the State asked "[the jury] do the right thing, and . . . come to the right verdict." The defendant argues this strong-armed the jury into believing that the only moral thing to do was to convict the defendant, not weigh the evidence as they should. Again, in light of the extensive case presented by the State, any potentially prejudicial effect is outweighed by the sheer weight of the evidence in this case. The State provided extensive victim and witness testimony that generally went uncontested by the defendant. *Cauthern*, 967 S.W.2d at 737. Furthermore, the trial court instructed the jury to follow the law, not the opinions of the attorneys, and we presume the jury followed those instructions. Even taking all the statements in aggregate, the defendant has failed to cite to authority that indicates that the State violated any of his substantive rights. *Armstrong*, 256 S.W.3d at 249. Under plain error review, we conclude the State did not act improperly and, therefore, the defendant is not entitled to relief.

## C. Jury Instructions

The defendant argues the trial court erred by failing to instruct the jury regarding sexual battery as a lesser-included offense of aggravated sexual battery. The defendant argues that as the proof fairly raised the completed offense he is entitled to an instruction as to the lesser-included offense as a matter of law.

"It is well-settled in Tennessee that a defendant has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001) (citing *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990)). Accordingly, trial courts have the duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)). An instruction will only be considered prejudicially erroneous if it fails to submit the legal issues fairly or misleads the jury as to the applicable law. *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005) (citing *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998)).

This Court has held some "types" of sexual battery contained in Tennessee Code Annotated section 39-15-505 may be lesser-included offenses of aggravated sexual battery; due to the wording of the statute, when the victim is less than thirteen years of age. However, sexual battery is not a lesser-included offense of aggravated sexual battery as defined in section 39-13-504(a)(4). *State v. Randall Vertis Grainger*, No. M2001-02178-CCA-R3-CD, 2002 WL 31385936, at *7 (Tenn. Crim. App. Oct. 22, 2002), *perm. app. denied* (Tenn. Mar. 3, 2003). The defendant was charged with aggravated sexual battery, pursuant to Tennessee Code Annotated section 31-13-504(a)(4), based upon engaging in sexual contact with the victim while she was less than 13 years of age. Therefore, the defendant is not entitled to the instruction as to the lesser-included offense.

Additionally the defendant argues that the trial court erred by failing to instruct the jury on the charge of attempted aggravated sexual battery. The defendant relies on the Tennessee Supreme Court decision *State v. Thorpe*, arguing "criminal attempt is available as a lesser-included offense of any charged offense in every case in which: (1) the charged offense has a requisite intent element; and (2) the proof has fairly raised the completed offense." 463 S.W.3d 851, 863 (Tenn. 2015). Upon review, the defendant is not entitled to relief.

Initially, we note the defendant failed to submit, in writing, either challenged jury instruction. This absence is confirmed by defense counsel's concession that no written

- 16 -

request was submitted. The trial court had the following exchange with defense counsel during the defendant's motion for a new trial:

> Trial Court: Well as far as the jury instructions are concerned, was there any special request in writing of any jury instructions?

> Defense Counsel: No, Your Honor. I do not believe -- I didn't see any. I know that there was some discussion but --

> Trial Court: Well this one page you gave me has problem with the rest of it. Probably was talking with them about the jury instructions and probably gave them a copy and defense counsel didn't have a problem with these. So I don't know -- but anyway, and I don't think there was any written requests for any.

> Defense Counsel: I don't believe there were any written requests, Your Honor. I don't believe there were.

Pursuant to Tennessee Code Annotated section 40-18-100(c),

> [W]hen the defendant fails to request the instruction of a lesser-included offense as required by this section, the lesser-included offense instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser-included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

Tenn. Code Ann. § 40-18-110(c). Therefore, because the defendant failed to make a written request, he is not entitled to relief.

Second, despite the defendant's waiver, he is not entitled to relied on the merits of his claim. *Thorpe* addressed a challenge to the inclusion of an attempt charge, not the exclusion. The Supreme Court explicitly noted the language in *Thorpe* "should not be interpreted as holding that a court's failure to give a lesser-included offense instruction on criminal attempt, even when such an instruction would be proper, necessarily constitutes reversible error." *Thorpe*, 463 S.W.3d at 863 n.4.

## D. Sentencing

When determining the appropriate sentence, the trial court must consider these factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing

alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) the evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103.

When the record establishes the sentence imposed by the trial court was within the appropriate range and reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The trial court must state on the record the factors it considered and the reasons for imposing the sentence. Tenn. Code Ann. § 40-35-210(e); *Bise*, 380 S.W.3d at 706. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

Here, in enhancing the defendant's sentence the trial court relied on the fact that the defendant had a history of criminal behavior, in addition to those necessary to establish the appropriate range, noting the defendant had been smoking two joints of marijuana every day for years. *See* Tenn. Code Ann. § 40-35-114(1). The defendant argues that this factor was not sufficient to enhance his sentence. However, the weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion, so long as its use complies with the purposes and principles of the Sentencing Act and the trial court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); *State v. Carter*, 254 S.W.3d 335, 342-43 (Tenn. 2008). Our review of the record indicates the trial court had sufficient factual basis to enhance the defendant's sentences.

## E. Cumulative Error

Finally, the defendant argues the cumulative effect of the State's and trial court's errors denied him a fair trial. The doctrine of cumulative error recognizes "there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). The doctrine of cumulative error

only applies when there has been more than one error committed during trial. *State v. Herron*, 461 S.W.3d 890, 910 (Tenn. 2015). As we have determined there were no errors at trial, the defendant is not entitled to relief.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
J. ROSS DYER, JUDGE